UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**SEVEN ARTS PICTURES, INC., ET AL**                                      **CIVIL CASE**

**VERSUS**                                                                         **No. 09-4814**

**JONESFILM**                                                                    **SECTION "I"**

## ORDER AND REASONS

Before the Court is a motion to dismiss for lack of personal jurisdiction filed by judgment debtor, Seven Arts Pictures, Inc. ("Seven Arts"). Alternatively, Seven Arts moves this Court to transfer venue to the United States District Court for the Central District of California. The judgment creditor, Jonesfilm, has filed a response. For the following reasons, Seven Arts' motion is **DENIED**.

### *BACKGROUND*

Jonesfilm is a Pennsylvania joint venture that owns the rights to certain motion pictures. Jonesfilm has been involved in a series of arbitrations and lawsuits with judgment debtors Seven Arts Pictures, Seven Arts Filmed Entertainment, Ltd. ("SAFE"), Seven Arts Pictures PLC ("PLC"), Cinevisions, and Peter Hoffman ("Hoffman").

In August 2005, Jonesfilm instituted an arbitration proceeding against all such judgment debtors before the Independent Film & Television Alliance ("IFTA"). On June 22, 2006, the IFTA arbitrator issued a partial award in favor of Jonesfilm. In the partial award, the arbitrator entered an award in favor of Jonesfilm and against the judgment debtors, jointly and severally, in the amount of $291,911 plus interest at the rate of 10% per annum. The arbitrator also awarded Jonesfilm $131,752.56 for attorneys' fees and other arbitration costs, as well as declaratory, injunctive and equitable relief. The arbitrator issued a final award on January 16, 2007. The final

1

award added an additional award in favor of Jonesfilm and against the judgment debtors, jointly and severally, in the amount of $114,433.97 for attorneys' fees and arbitration costs.

After issuance of the IFTA arbitration award, Jonesfilm moved in an already pending proceeding to have the U.S. District Court for the Central District of California confirm the award. On June 19, 2007, the U.S. District Court for the Central District of California confirmed the arbitration award and entered judgment in favor of Jonesfilm and against the judgment debtors, jointly and severally, for: (A) the $291,911 partial award, plus interest at the rate of 10% per annum starting from July 20, 2004; (B) an additional $246,186.53, representing the combined attorneys' fees and other arbitration costs awarded in the partial award and the final award, plus interest at the rate of 10% per annum starting from January 16, 2007.

According to Jonesfilm, the judgment debtors failed to comply with the mandatory and equitable orders contained in the June 19, 2007 judgment. On July 25, 2007, Jonesfilm filed a motion for contempt against the judgment debtors and Hoffman. The U.S. District Court for the Central District of California issued an order on February 26, 2008 holding the judgment debtors and Hoffman in contempt, and awarding Jonesfilm (among other things) $14,300 in attorneys' fees.

The judgment debtors appealed the U.S. District Court for the Central District of California's June 19, 2007 judgment and the February 26, 2008 contempt order. The United States Court of Appeals for the Ninth Circuit affirmed the district court's judgment and the contempt order. The Ninth Circuit 's mandate became effective on April 23, 2009. According to Jonesfilm, the judgment has not been paid and the contempt order has not been satisfied.

Jonesfilm also conducted judgment debtor discovery pursuant to the U.S. District Court for the Central District of California's June 19, 2007 judgment. Through that discovery,

Jonesfilm learned that Seven Arts is an owner of Seven Arts Pictures Louisiana LLC ("Seven Arts Pictures Louisiana"), a Louisiana limited liability company. Jonesfilm subsequently learned, from documents on file with the Louisiana Secretary of State, that Seven Arts owns membership interests in three other Louisiana limited liability companies: Seven Arts Filmed Entertainment Louisiana, LLC ("SAFE Louisiana"), Seven Arts Pictures Louisiana (Equicap), LLC ("Equicap"), and Seven Arts Post, LLC ("Post"). Further, Seven Arts is the sole manager of Seven Arts Esplanade Development, L.L.C. ("Seven Arts Esplanade Development"), which is also a Louisiana limited liability company.

On July 31, 2009, Jonesfilm registered the U.S. District Court for the Central District of California's June 19, 2007 judgment in this Court pursuant to 28 U.S.C. § 1963. On October 6, 2010, Jonesfilm sought, and this Court issued, charging orders against the judgment debtors' membership interests in five Louisiana limited liability companies.[1] The Court's order also required the judgment debtors to deliver financial statements, tax returns, and K-1's of the judgment debtors and those Louisiana limited liability companies. On March 25, 2011, Jonesfilm filed a motion for contempt with respect to the judgment debtors' alleged failure to comply with such charging orders and to compel answers to certain garnishment interrogatories.

In response to the motion for contempt, Seven Arts, by special appearance, subsequently filed the instant motion to dismiss for lack of personal jurisdiction or, alternatively, to transfer venue. Seven Arts argues that it does not have sufficient minimum contacts with Louisiana such that this Court may exercise jurisdiction over them. Additionally, Seven Arts makes various arguments with respect to why this Court may not exercise personal jurisdiction over Hoffman and the other judgment debtors. Jonesfilm responds that each of the judgment debtors has systematic and continuous contacts with Louisiana.

---

[1] Jonesfilm's motion seeking such charging orders was unopposed.

## LAW AND ANALYSIS

### *Personal Jurisdiction*

The Due Process Clause of the Fourteenth Amendment limits the power of a state to assert personal jurisdiction over a nonresident defendant. *See Pennoyer v. Neff,* 95 U.S. 714, (1878). In a diversity suit, a "federal court has personal jurisdiction over a nonresident defendant to the same extent that a state court in that forum has such jurisdiction." *Wilson v. Belin*, 20 F.3d 644 (5th Cir. 1994); *see also* Fed. R. Civ. P. 4(e).

First, the defendant must "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945) (*quoting Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342-43, 85 L.Ed. 278, 283 (1940)).

Second, it must be reasonable to require the nonresident to defend the lawsuit in the forum state. *See Burger King,* 471 U.S. at 476-78, 105 S. Ct. at 2184-85, 85 L. Ed. 2d at 543-44. Under the reasonableness prong, "[a] court must consider the burden on the defendant, the interests of the forum State, ... the plaintiff's interest in obtaining relief[,] ... 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies[,] and the shared interest of the several States in furthering fundamental substantive social policies.'" *Asahi Metal Indus. Co. v. Super. Ct. of Cal.,* 480 U.S. 102, 113, 107 S. Ct. 1026, 1033, 94 L. Ed. 2d 92, 105 (1987) (*citing World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S. Ct. 559, 564, 62 L. Ed. 2d 490, 498 (1980)).

There are two types of minimum contacts: those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction. *Id.*

A court may exercise specific personal jurisdiction over a non-resident defendant when (1) the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there and (2) the controversy arises out of or is related to the defendant's contacts with the forum state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471–76 (1985); *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–19 (1984). The focus of this inquiry is on the relationship between the defendant, the forum, and the litigation. *Helicopteros Nacionales,* 466 U.S. at 414.

General personal jurisdiction may be found when the defendant's contacts with the forum state are substantial, continuous, and systematic even though the cause of action does not arise out of or relate to the defendant's activities in the forum state. *Helicopteros Nacionales,* 466 U.S. at 414–19. To confer general jurisdiction, a defendant must have a business presence in the forum state. *Access Telecom, Inc. v. MCI Telecomm. Corp.,* 197 F.3d 694, 717 (5th Cir.1999).

The general jurisdiction inquiry is "dispute blind, the sole focus being on whether there are any continuous and systematic contacts between the defendant and the forum." *Dickson Marine, Inc. v. Panalpina, Inc.,* 179 F.3d 331, 339 (5th Cir.1999). Rather than mere "minimum" contacts, "continuous and systematic" contacts must exist between the state and the foreign corporation because "the forum state does not have an interest in the cause of action." *Id.* The Fifth Circuit has noted that the continuous and systematic test "is a difficult one to meet, requiring extensive contacts between a defendant and a forum." *Submersible Sys., Inc. v. Perforadora Cent.,* 249 F.3d 413, 419 (5th Cir.2001).

Once a party challenges jurisdiction, the burden is on the opposing party to show that the Court has personal jurisdiction over the other party. The court must accept as true a party's uncontroverted allegations and resolve any factual conflicts in favor of the party seeking to

5

invoke the court's jurisdiction. *Cent. Freight Lines Inc. v. APA Transp. Corp.,* 322 F.3d 376, 380 (5th Cir. 2003); *Stripling v. Jordan Prod. Co., LLC,* 234 F.3d 863, 869 (5th Cir. 2000); *Alpine View Co. v. Atlas Copco AB,* 205 F.3d 208, 215 (5th Cir. 2000). The law, however, does not require the court to credit conclusory allegations, even if uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.,* 253 F.3d 865, 869 (5th Cir. 2001). When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the party asserting jurisdiction must present facts sufficient to constitute a *prima facie* case of personal jurisdiction. *See Cent. Freight Lines,* 322 F.3d at 380; *Brown v. Slenker,* 220 F.3d 411, 417 (5th Cir. 2000); *Alpine View,* 205 F.3d at 215; *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985). Proof by a preponderance of the evidence is not required. *See Luv n' care,* 438 F.3d at 469.

Jonesfilm does not appear to contend that this Court may exercise specific jurisdiction over any of the judgment debtors. Accordingly, the Court shall determine whether it may exercise general personal jurisdiction over them.

### *Standing to Challenge Personal Jurisdiction and Venue*

The Court notes that, at this stage of the proceedings, only Seven Arts has made a special appearance to challenge personal jurisdiction and venue. However, Seven Arts appears to attempt to challenge personal jurisdiction on behalf of all of the judgment debtors.

As the United States District Court for the Southern District of California recently explained:

> Unlike subject matter jurisdiction, personal jurisdiction and venue represent a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty. *See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702-03, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) (personal jurisdiction); *Interior Const. & Imp. Co. v. Gibney,* 160 U.S. 217, 219-20, 16 S.Ct. 272, 40 L.Ed. 401

6

>  (1895) (venue). As a result, both are waivable by the affected parties, and therefore cannot be raised on their behalf by anyone else. *See Sayles v. Pac. Eng'rs & Constructors, Ltd.,* No. 08-CV-676S, 2009 WL 791332, at *7 (W.D.N.Y. Mar. 23, 2009) (citation omitted) (defendant lacks standing to contest personal jurisdiction over a co-defendant); *Smithkline Beecham Corp. v. Geneva Pharmaceuticals, Inc.,* 287 F.Supp.2d 576, 580 n. 7 (E.D.Pa. 2002) (citation omitted) (same); *Vance Trucking Co. v. Canal Ins. Co.,* 338 F.2d 943, 944 (4th Cir.1964) (citing *Camp v. Gress,* 250 U.S. 308, 39 S.Ct. 478, 63 L.Ed. 997 (1919)) (defendant cannot raise the defense of improper venue on behalf of a co-defendant); *Schoen v. Mountain Producers Corp.,* 170 F.2d 707, 713 ([3rd] Cir.1948) (citing *Camp,* 250 U.S. at 316) (same); *Pratt v. Rowland,* 769 F.Supp. 1128, 1132 (N.D.Cal.1991) (citing *Camp,* 250 U.S. at 316) (same).

*Jenkins v. Smead Mfg. Co.*, No. 09-CV-0261-IEG (BLM), 2009 WL 3628100, at *3 (S.D. Cal. 2009); *see also Duttle v. Bandler & Kass*, No. 82 CIV. 5084, 1992 WL 162636, at *5 (S.D.N.Y. June 23, 1992) (Wood, J.).

For the reasons stated above, Seven Arts lacks standing to challenge personal jurisdiction and/or venue with respect to the other judgment debtors. *See Jenkins v. Smead Mfg. Co.*, 2009 WL 3628100, at *3. Accordingly, the Court makes no determination with respect to whether it lacks personal jurisdiction over Hoffman, PLC, SAFE, or Cinevisions, or if venue is improper in this district with respect to such judgment debtors.

### *General Jurisdiction Over Seven Arts*

The documentary evidence[2] provided the Court indicates that Seven Arts has engaged in ongoing business within the State of Louisiana. Where a defendant continuously and systematically "purpose[ly] avail[s] [itself] of the benefits and protections of the forum state," it

---

[2] During a May 27, 2011 status conference with the Court, counsel for Seven Arts stipulated to the authenticity of the exhibits considered by the Court in conducting its personal jurisdiction analysis. R. Doc. No. 57. In accordance with the Court's minute entry memorializing such status conference, Seven Arts subsequently filed objections to the admissibility of such evidence. R. Doc. No. 58. The Court has considered Seven Arts' objections with respect to the evidence considered by the Court for purposes of the instant motion. **IT IS ORDERED** that Seven Arts' objections are **OVERRULED**.

would not be unconstitutional to exercise jurisdiction over it, so long as it does not "offend traditional norms of fair play and substantial justice." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867-68 (5th Cir. 2001).

Although managed and owned by several of its subsidiaries, Seven Arts maintained an active involvement in the development and financing of 807 Esplanade, where Seven Arts entities engaged in production and post-production for its films. In his interactions with Chris Stelly ("Stelly"), a Director of Louisiana Film & Television, a sub-agency of the Department of Economic Development, regarding applications for tax credits for Seven Arts' affiliates, Hoffman, the Seven Arts CEO, routinely sent e-mails and letters on behalf of Seven Arts using Seven Arts letterhead and stationery.[3] In an October 20, 2009 letter to Stelly, Hoffman indicated that Seven Arts would be submitting "substantial" additional expenses of $7.3 million that had been expended in the state on the 807 Esplanade facility on top of the significant amount that had been approved in the past for such expenditure. Moreover, Hoffman represented to Stelly that the 807 Esplanade facility should "be sufficient for all sound work on most [of Seven Arts'] smaller theatrical and television titles"[4] and they intended to "complete at 807 Esplanade as much of the sound on any particular picture as [Seven Arts] can justify from a creative and technical standpoint."[5] In this same letter, Hoffman indicated that "Seven Arts' willingness to invest the time and money to start this project and bring . . . to fruition" the 807 Esplanade facility.[6] Seven Arts also "reported more than $2,000,000 in distribution fee revenue" coming from Louisiana.[7]

Furthermore, a September 13, 2007 letter from Hoffman on Seven Arts' behalf indicates Seven Arts' substantial involvement in "Deal," a film that was filmed "100%" in Louisiana and

---

[3] *See* R. Doc. 52-3, pg. 7.
[4] R. Doc. 52-3, pg. 8.
[5] *Id.*
[6] *Id.* at 9.
[7] *Id.*

resulted in $12,000,000 in expenditures within the state.[8] Moreover, Seven Arts itself provided Post with $6,616,221 to fund their operations within the state.[9] Seven Arts owns sixty percent of Seven Arts Pictures Louisiana, serves as its managing member and funds its operations.[10] Seven Arts Pictures Louisiana expended over twelve million dollars on the 807 Esplanade facility between November 2008 and September 2009.[11] Seven Arts Pictures Louisiana also obtains significant tax credits through its expenditures in the state.[12] Seven Arts, as managing member of Seven Arts Pictures Louisiana, is undoubtedly a beneficiary of those tax credits.

Seven Arts also owns Seven Arts Filmed Entertainment Louisiana and New Moon Pictures, LLC, each of which transacts substantial business within the state. With respect to the Seven Arts film *Night of the Demons*, which was filmed in Louisiana, each of the submissions regarding tax credits and expenditures came from Seven Arts.[13]

Examining the contacts in aggregate indicates that exercising general personal jurisdiction over Seven Arts would comport with "traditional notions of fair play and substantial justice." *Wilson*, 20 F.3d at 644 (quoting *Int'l Shoe Corp. v. Washington*, 326 U.S. 310, 316 (1945)). Having expended such resources in Louisiana and derived numerous benefits from its affiliation with the state, a reasonable person in Seven Arts' shoes could "reasonably anticipate being haled into court [here]." *Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867 (5th Cir. 1999) (quoting *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980)).

The Court also notes that SAP would not be unduly burdened if forced to defend itself in this forum. SAP has maintained a continuous presence in Louisiana through its own activities

---

[8] *See* R. Doc. 52-2, pgs. 62-67.
[9] *See* R. Doc. 52-3, pg. 15.
[10] *Id.* at 16.
[11] *Id.* at 18.
[12] *See* R. Doc. 52-3, pg. 10.
[13] *See* R. Doc. 52-3, pgs. 35-36.

and those of its affiliates. Having conducted such business in Louisiana, it would not be unreasonable to require SAP to defend itself here.  Although SAP has argued that it would be more convenient for SAP to litigate this matter in the U.S. District Court for the Central District of California, SAP offers no argument or evidence tending to indicate that SAP would be in any way burdened by litigating this matter in this Court.  Additionally, given the fact that SAP conducts substantial business in Louisiana and that it has benefitted from Louisiana tax credits, the State of Louisiana has an interest in having this matter litigated in a local court.

The Court further notes that this action has been pending in this Court since July 31, 2009.  This Court has expended substantial time and resources adjudicating various aspects of this matter.  Judicial efficiency militates in favor of exercising jurisdiction over this matter.

*Venue*

Seven Arts argues that, if the Court finds it has personal jurisdiction over the judgment debtors, it should transfer this case to the U.S. District Court for the Central District of California under 28 U.S.C. § 1404(a) because that court has jurisdiction over the judgment debtors, the evidence and witnesses are within that court's jurisdiction, and California law should apply to this judgment debtor discovery issue.[14] In its opposition, Jonesfilm argues that Seven Arts has not attempted to establish that the remedies in California will protect the judgment creditor's rights with respect to the garnishees and has not demonstrated that the California court is a more convenient venue.[15]

It is well settled that the decision to transfer a case pursuant to 28 U.S.C. § 1404(a) is a matter within the trial court's discretion. *See Jarvis Christian College v. Exxon Corp.,* 845 F.2d 523, 528 (5th Cir. 1988). Pursuant to § 1404(a), "[f]or the convenience of parties and witnesses,

---

[14] R. Doc. No. 44-1.
[15] R. Doc. No. 52.

in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The party moving for a transfer of venue "must first establish that there is an alternate forum that is both available and adequate." *McLennan v. Am. Eurocopter Corp.*, 245 F.3d 403, 424 (5th Cir. 2001) (internal citation omitted). "A foreign forum is available when the entire case and all parties can come within the jurisdiction of that forum." *Id.* (internal quotes omitted). "A foreign forum is adequate when the parties will not be deprived of all remedies or treated unfairly…." *Id.* (internal quotes omitted); *See also, In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147, 1165 (5th Cir. 1987). If the defendant establishes that an adequate alternative forum is available, the defendant must then demonstrate that transfer is appropriate because the alternative forum is more convenient, based on consideration of what are known as "private interest" and "public interest" factors. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1989) (citing *Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 508 (1947)). If the venue to which the defendant moves for transfer is not clearly more convenient, the plaintiff's choice of venue should be respected by the court. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc).

As a threshold matter, the Court notes that Seven Arts presents no argument whatsoever that the Central District of California is an adequate forum for Jonesfilm to enforce its rights. Further, Seven Arts has not made a convincing showing with respect to why the Central District of California is a more convenient venue. Seven Arts makes conclusory statements that *all* documents and witnesses related to the judgment debtor are available in the Central District of California. However, it does not identify those documents or witnesses or explain their relevance to the Court's enforcement of the judgment at issue in this matter. Due to Seven Arts'

11

failure to meet its burden, the Court exercises its discretion and determines that this case should not be transferred to the U.S. District Court for the District of California. Such a transfer would also not be in the interest of justice.

## **CONCLUSION**

For the aforementioned reasons, **IT IS ORDERED** that Seven Arts' motion to dismiss for lack of personal jurisdiction is **DENIED**. **IT IS FURTHER ORDERED** that Seven Arts' motion to transfer venue to the United States District Court for the Central District of California is **DENIED**.

New Orleans, Louisiana, June __17th__, 2011

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**