**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**


| | | |
|---|---|---|
| **SEVEN ARTS PICTURES, INC., ET AL** | * | **CIVIL ACTION NO. 09-4814** |
| | * | **c/w 09-4815** |
| **Plaintiffs** | * | |
| | * | **SECTION: H** |
| | * | **JUDGE JANE TRICHE MILAZZO** |
| **VERSUS** | * | |
| | * | |
| | * | **MAGISTRATE: 3** |
| **JONESFILM** | * | **MAG. DANIEL KNOWLES, III** |
| **Defendant** | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * ****


**ORDER AND REASONS**

The matters before the Court are a Motion for Judgment Against Judgment Debtors and Garnishees for Their Disobedience of this Court's November 15, 2011 Order (Doc. 121) ("Motion for Contempt") filed by Jonesfilm and a Motion to Dismiss for Lack of Jurisdiction and/or Alternatively Motion to Transfer Venue (Doc. 126) filed by Cinevisions, Peter Hoffman, Seven Arts Filmed Entertainment Limited and Seven Arts Entertainment Inc.  For the following reasons, Defendant's Motion for Disobedience of this Court's November 15, 2011 Order is GRANTED and

Plaintiffs' Motion to Dismiss for Lack of Jurisdiction and/or Alternative Motion to Transfer is DENIED.

## BACKGROUND

In 2002 a dispute arose out of the alleged misconduct of Defendant Peter Hoffman's Company, NTTS Productions, Ltd., with respect to certain Jonesfilm motion picture rights. Jonesfilm instituted an arbitration proceeding against Defendant Peter Hoffman ("Hoffman") and his affiliate company, NTTS Productions, Ltd. ("NTTS"), before the American Film Marketing Assocation ("AFMA"). On July 20, 2004, the AFMA arbitration tribunal issued a declaration of rights in favor of Jonesfilm and a monetary award to Jonesfilm against NTTS. The order was confirmed by the Superior Court for Los Angeles County, California in December 2004. On March 18, 2005, the Los Angeles Superior Court amended its judgment to include Hoffman as a Judgment Debtor in the action as the alter ego of NTTS, finding him jointly and severally liable for its obligation under the judgment.

In August 2005, Jonesfilm instituted an arbitration proceeding against Peter Hoffman affiliates Cinevisions ("CV"), Seven Arts Pictures, Inc. ("SAP"), Seven Arts Filmed Entertainment Limited ("SAFE"), and Seven Arts Pictures, PLC ("PLC") before the Independent Film & Television Alliance ("IFTA"). On June 22, 2006, the IFTA arbitrator issued a monetary award and other relief in favor of Jonesfilm and against the Peter Hoffman affiliates, CV, SAP, SAFE and PLC, jointly and

severally.  The arbitrator awarded Jonesfilm $291,911.00 plus interest at the rate of ten percent per annum and $131,752.56 for attorneys' fees and other arbitration costs.  The United States District Court for the Central District of California confirmed the arbitration award on June 19, 2007.  The Court further awarded $246,186.53 representing the combined attorneys' fees and other arbitration costs plus interest at ten percent per annum starting from January 16, 2007.

On July 25, 2007 Jonesfilm filed a motion for contempt against the judgment debtors and Hoffman alleging that they failed to comply with the June 19, 2007 Judgment.  The United States District Court for the Central District of California issued an order on February 26, 2008 holding the judgment debtors and Hoffman in contempt, and awarded Jonesfilm $14,300.00 in attorneys' fees.

Judgment debtors subsequently appealed both the June 19, 2007 Judgment and the February 26, 2008 Order to the United States Court of Appeals for the Ninth Circuit.  The Ninth Circuit affirmed both the Judgment and Order on February 12, 2009.

Jonesfilm alleges that the judgment debtors have failed to make any payments to Jonesfilm and have further failed to satisfy any other obligations imposed by these previous judgments. Jonesfilm conducted discovery which confirmed that Hoffman and other Judgment Debtors have interests in Louisiana properties and, in light of their failure to pay Jonesfilm on the previous judgments, began actions in this Court to collect on and enforce its judgments.  Thus, on July 31, 2009 Jonesfilm registered the June 19, 2007 Judgment in this Court.

On October 6, 2010 Jonesfilm sought, and this Court issued, charging orders against the

judgment debtors' membership interests in five Louisiana limited liability companies.  The Court's order also required the judgment debtors to deliver financial statements, tax returns, and K-1 documentation of the judgment debtors and the Louisiana limited liability companies.

On March 25, 2011 Jonesfilm filed a Motion for Contempt with respect to the judgment debtors' alleged failure to comply with such charging orders and to compel answers to certain garnishment interrogatories.  On August 15, 2011 Jonesfilm filed a Motion for Order Requiring Immediate Delivery by Garnishee Leeway Properties, Inc. and Judgment Debtor Peter Hoffman of Funds and Other Relief.  On October 26, 2011 Magistrate Judge Knowles issued a Report and Recommendation on these two Motions.  On November 15, 2011 this Court approved the Magistrate Judge's Findings and Recommendation and adopted it as its own.  Accordingly, this Court granted Jonesfilm's Motion for Contempt and Motion Requiring Immediate Delivery of funds. Additionally, the Court awarded Jonesfilm $21,357.50 in attorneys' fees.

On December 16, 2011 Jonesfilm filed a Motion for Contempt in relation to this Court's November 15, 2011 Order.  (Doc. 121.)   Esplanade Pictures LLC ("Esplanade"), SAP, Seven Arts Filmed Entertainment Louisiana, LLC ("SAFE LA"), Seven Arts Pictures Louisiana (Equicap), LLC ("Equicap"), Seven Arts Post LLC ("Post"), 807 Esplanade Avenue MT LLC ("807"), collectively "Garnishees," filed their Memorandum in Opposition on January 24, 2012.  (Doc. 128.)  Leeway Properties, Inc. ("Leeway") filed its memorandum in opposition on January 24, 2012.  (Doc. 129.) Jonesfilm filed a supplemental memorandum on February 1, 2012.  (Doc. 138.)  Jonesfilm replied

4

to the Garnishees opposition and Leeway's opposition on February 1, 2012. (Docs. 140, 142.) Peter Hoffman and SAP filed a memorandum in opposition on February 13, 2012. (Doc. 149.) Jonesfilm's Motion for Contempt was taken under submission on February 15, 2012.

On January 17, 2012 CV, Hoffman, SAFE, and Seven Arts Entertainment Inc. ("SAE") filed a Motion to Dismiss for Lack of Jurisdiction and/or Motion to Transfer to the Central District of California. (Doc. 126.) Jonesfilm opposed the Motion on January 27, 2012. (Doc. 133.) The Plaintiffs filed their reply memorandum on February 13, 2012. (Doc. 150.) Plaintiffs' Motion was taken under submission on February 15, 2012.

**LAW AND ANALYSIS**

*I. Motion for Contempt*

Jonesfilm requests the Court (1) to enter judgment against Leeway and Hoffman in the amount of $174,769.56 which this Court had previously order they immediately deliver, but which they have not, plus interest from January 28, 2011; (2) to compel each judgment debtor to deliver its financial statements and tax returns to Jonesfilm for 2007 through 2011 in accordance with this Court's November 15, 2011 Order; (3) to compel each garnishee to fully answer the Garnishment Interrogatories with complete and responsive answers in accordance with Magistrate Judge Knowles' Report and Recommendation and this Court's November 15, 2011 Order; (4) to award Jonesfilm reasonable attorneys' fees and costs not less than $7,977.00 against the judgment

debtors and garnishees jointly and severally as a result of obtaining compliance with this Court's November 15, 2011 Order; and (5) to correct a typographical error in the third decretal paragraph which conjoins Seven Arts Entertainment Inc. and Seven Arts Filmed Entertainment Limited. For the following reasons the Court grants all requested relief in Jonesfilm's Motion for Contempt.

### A. Legal Standard

"A movant in a civil contempt proceeding bears the burden of establishing by clear and convincing evidence (1) that a court order was in effect; (2) that the order required certain conduct by the respondent; and (3) that the respondent failed to comply with the court's order." *Test Masters Educ. Services, Inc. v. Singh*, 428 F.3d 559, 581-582 (5th Cir. 2005) (internal citations and quotations omitted). "The contemptuous actions need not be willful so long as the contemnor actually failed to comply with the court's order." *American Airlines Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 581 (5th Cir. 2000); *see also McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949) ("an act does not cease to be a violation of the law and of a decree merely because it may have been done innocently").

### B. Jonesfilm's Allegations of Contempt

#### (i) Immediate Delivery of $174,769.56

Jonesfilm asserts that Leeway and Hoffman continue to disobey the Court's November 15, 2011 Order requiring "immediate delivery" of $174,769.56 disbursed by Leeway in violation of the Court's January 26, 2011 Garnishment Order. (Doc. 121-1 at 2.) Additionally, neither Leeway nor

6

Hoffman have provided any accounting or tracing of the wrongfully transferred funds. (*Id.*) Jonesfilm contends that, due to these failures, it is entitled to damages pursuant to Louisiana Civil Code Article 2502. (*Id.* at 10-11.) Jonesfilm further argues that interest should accrue at the California statutory rate of ten percent per annum on the $174,769.56 beginning on January 28, 2011 for the same reasons that Judge Knowles found that California's remedies of a constructive trust and a constructive or equitable lien should apply to the $174,769.56. (*Id.* at 12.) Leeway opposes these arguments and asserts that because $0.00 is in its bank account and that it cannot rescind the unauthorized account transfers then it cannot immediately transfer what it does not have. (Doc. 129 at 2-3.) Leeway also notes that it is still awaiting the outcome of the investigation into the wrongful transfers. (*Id.*)

This Court finds that a court order was in effect. (*See* Doc. 114.) Moreover, the Order required Leeway and Hoffman to immediately deliver to the U.S. Marshal the sum of $174,769.56 and to deliver a full and complete accounting and tracing of any and all disbursements and proceeds to the extent that Leeway and Hoffman had disbursed any of these monies. (*See* Doc. 114; *see also* Doc. 82.) Thus, the only inquiry this Court must determine is whether or not Leeway and Hoffman failed to comply with the Order.

This Court finds that the evidence provided to the Court establishes conclusively that Leeway and Hoffman have failed to comply with this Court's Order. (*See* Doc. 121.) This Court finds that Leeway's arguments are mere excuses and can in no way circumvent their duties to

comply with this Court's Order.

"All orders and judgments of courts must be complied with promptly." *Maness v. Meyers*, 419 U.S. 449, 458 (1975). If a party feels that a court "[o]rder is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal." *Id.* "Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect." *Id.* at 458-459 (internal citations omitted). While an appeal has been taken concerning this Court's Order, there has been no request for a stay and therefore Hoffman and Leeway should have immediately complied with the Order of the Court. Simply arguing that there has been fraudulent activity or $0.00 in the garnishees accounts does not relieve a party of their duty to comply with an Order of the Court. *See Blackwelder v. Collins*, 252 F.2d 854, 855 (D.C. Cir. 1958) ("judgments do not require the payment of any specifically identified or identifiable money, and would be satisfied by the payment of the amount in legal tender from any source"). Accordingly, this Court finds Leeway and Hoffman to be in contempt.

(ii) <u>Production of Financial Statements and Tax Returns</u>

Jonesfilm asserts that no Judgment Debtor has delivered its financial statements or tax returns for 2007-2010, except for some extracts from filings of PLC and SAE with the SEC, despite being ordered to do so by this Court. (Doc. 121-1 at 13.) SAP argues that the entirety of Jonesfilm's Motion should be dismissed pending the appeal to the Fifth Circuit. (Doc. 128.) Leeway does not

oppose this portion of Jonesfilm's Motion. (*See* Doc. 129.) In Hoffman's Supplemental Memorandum he argues that he is not in violation of the Court Order as he sent the 2010 returns for himself and SAP as an attachment to a letter on February 3, 2012. (Doc. 149 at 2; *see also* Doc. 149-1.)

This Court finds that a court order was in effect. (*See* Doc. 114.) Moreover, the Order required the "judgment debtors, to the extent that they have not already done so, [to] comply with the District Court's Charging Order dated October 6, 2010 no later than fourteen days from the date of this Report and Recommendation. (Doc. 109 at 14; *see also* Doc. 114.) Thus, the only inquiry this Court must determine is whether or not the judgment debtors failed to comply with the Order.

The affidavit of Barry Goldin provides that Hoffman, SAP and SAFE have not delivered his or its financial statements for any of the years 2007 through 2010 or any of 2011 to Jonesfilm. (Doc. 121-2 at ¶12.) Moreover, "no Judgment Debtor has delivered any tax returns for any period to Judgment Creditor Jonesfilm." (*Id.*) Lastly, "the only financial statements obtained by Jonesfilm were extracts from filings with the [United States Securities and Exchange Commission] ("SEC") of [PLC] and its successor Seven Arts Entertainment, Inc." (*Id.*)

A party accused of contempt for disobedience of a court order can defend by showing a present inability to comply with the order. *United States v. Rylander*, 460 U.S. 752, 757 (1983).That party, however, bears the burden of production. *Id.; see also F.D.I.C. v. LeGrand*, 43 F.3d 163, 170

(5th Cir. 1995) Hoffman, in refuting Jonesfiilm's arguments, merely produces a letter sent to Jonesfilm, and does not attach any of the tax returns or financial statements that he supposedly provided. This Court does not find this letter sufficient to bear the burden of overcoming Mr. Goldin's sworn affidavit. Moreover, as noted in section (B)(i), *infra*, the notion that an appeal has been taken does not overcome a litigant's obligation to abide by an Order of the Court. As such, this Court finds the judgment debtors to be in contempt.

(iii) <u>Responses to Garnishment Interrogatories</u>

Jonesfilm asks the Court to hold Garnishees in contempt and sanction them for failing to obey the November 15, 2011 Order requiring them to supplement their interrogatory answers with "any post-June 30, 2010 transactions and agreements with" Judgment Debtors. (Doc. 121-1 at 21.) Jonesfilm highlights that Garnishee Leeway has not provided *any* supplemental interrogatory answers. (*Id*. at 20.) Additionally, Jonesfilm notes that much of the Garnishees responses are deficient. (*Id.* at 19) (Garnishees responses are improper because they (1) continue to deny having agreements with or owing monies to Judgment Debtors, in contravention of SEC filings; (2) fail to provide information relating to transactions with SAE or any Judgment Debtors; (3) continue to assert objections already overruled by the Court; (4) provide non-responsive answers; (5) fail to attach a privilege log) (*see also* Doc. 121-2 at ¶¶ 12-21.)

Leeway did not file an opposition to this portion of Jonesfilm's argument. SAP opposes these allegations and asserts that Jonesfilm's Motion for Contempt should be dismissed until the

Fifth Circuit has ruled on the issues of contempt, which are currently under appeal. (Doc. 128 at 2.) Additionally, SAP notes that even though it has appealed this Court's previous Order of Contempt, it has nonetheless attempted to comply with this Court's Order by supplementing garnishment interrogatories, and that intends to continue to do so. (*Id*.) SAP also attaches a letter from Peter Hoffman, counsel for SAP, to David Waguespack, counsel for Jonesfilm, which notes that Jonesfilm's Motion for Contempt is inappropriate because Jonesfilm did not "meet and confer" to discuss lingering issues with the interrogatory responses or respond to a memorandum sent to them along with the Supplemental Interrogatory Responses that invited Jonesfilm to advise them if they believed that anything further was needed. (Doc. 128-1.) SAP claims that Jonesfilm asserts numerous falsehoods in its Motion, and that a letter SAP sent to Jonesfilm "confirm[s] the truth of the supplemental answers to garnishment interrogatories provided by SAP and the garnishees." (*Id.*)

This Court finds that a court order was in effect. (*See* Doc. 114.) Moreover, the Order compelled the garnishees to "[s]upplement and amend their responses to the garnishment interrogatories" in accordance with the Report and Recommendation. (Doc. 109 at 14; *see also* Doc. 114.) Thus, the only inquiry this Court must determine is whether or not the judgment debtors failed to comply with the Order.

The Court finds that Leeway's complete failure to supplement its interrogatory answers merits a finding that they are in contempt. As for the other Garnishees' supplemental responses,

this Court finds that while Jonesfilm's criticisms of garnishees' responses are not without merit, it is not entirely clear that the responses do not comply with this Court's Order. Judge Knowles' Report and Recommendation, adopted as an Order of the Court, requires garnishees to supplement their interrogatory responses with "related company balance[s]" between garnishees and judgment debtors, and also requires an accounting of "financial transfers and obligations that occurred before service of the garnishment interrogatories." (Doc. 109 at 11-12.) Jonesfilm's primary criticism of garnishees' supplemental responses is that they continue to omit any financial relationship between garnishees and SAE. Garnishees' response is that SAE is not a judgment debtor.

Based on the strict text of Judge Knowles' Report and Recommendations (Doc. 109) and this Court's Order adopting them (Doc. 114), Garnishees are correct – SAE is not properly listed as a judgment debtor. There is strong merit, however, to Jonefilm's assertions that SAE has previously been listed as a judgment debtor in this Court's Garnishment Order (Doc. 17) and that SAE legally must be considered a judgment debtor as the successor of Judgment Debtor PLC because of the original California judgment and SAE's own SEC filings asserting its status as successor to PLC. Accordingly, the Court hereby amends its Order to specifically rule that SAE is a judgment debtor and will defer on making a decision concerning the compliance of the supplemental responses until Garnishees have a chance to provide the necessary information as pertaining to SAE.

(iv) Attorneys Fees, Costs and Sanctions

As previously noted, all requirements for a motion for civil contempt are satisfied in this case. Additionally, because neither Judgment Debtors nor Garnishees have applied for a stay of the proceedings or provided affirmative proof as to why they cannot comply with the Court Order to supplement discovery and deliver funds to the Court, this Court finds that the Judgment Debtors and Garnishees are in contempt of this Court's Order.

"[Federal Rule of Civil Procedure] 37(b) empowers the courts to impose sanctions for failures to obey discovery orders. In addition to a broad range of sanctions, including contempt, [Rule] 37(b)(2) authorizes the court to impose a concurrent sanction of reasonable expenses, including attorney's fees, caused by the failure to obey a discovery order." *Smith & Fuller, P.A. v. Cooper Tire & Rubber, Co.*, 685 F.3d 486, 488 (5th Cir. 2012) (quoting *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 784 (9th Cir.1983)). Ultimately, "[t]he district court has broad discretion under Rule 37(b) to fashion remedies suited to the misconduct." *Id.* (quoting *Pressey v. Patterson*, 898 F.2d 1018, 1021 (5th Cir.1990)) (internal quotations omitted).

Rule 37(b)(2)(c) specifically provides that instead of or in addition to the remedies found in Rule 37(b)(A)(i)-(vii):

> [t]he court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37. The Court finds that this is the appropriate sanction in this case. Thus, the Court finds that $15,000.00 should cover reasonable expenses, including attorney's fees, caused by the

failures of the Judgment Debtors and Garnishees.

(v) <u>Correction of Decretal Paragraph</u>

Jonesfilm maintains that this Court's November 15, 2011 Order "inadvertently and erroneously conjoined the names of . . . two Judgment Debtors ["Seven Arts Entertainment Inc. and Seven Arts Filmed Entertainment Limited"] into one name "Seven Arts Entertainment Limited." (Doc. 121-1 at 23.) Jonesfilm points out that this Court previously named Seven Arts Entertainment Inc. as a Judgment Debtor in its January 26, 2011 Garnishment Order. (Doc. 121-1 at 4)(citing Doc. 17 at 1). Jonesfilm also argues that Seven Arts Entertainment Inc. is necessarily a Judgment Debtor because Seven Arts Entertainment Inc. is the acknowledged successor of Judgment Debtor Seven Arts PLC and the California Judgment at issue explicitly states that it is fully binding on all Judgment Debtor's successors. (Doc. 121-1 p.3; *see also Id.* at 17 n.7, citing Doc. 121-2.) Hoffman, however, claims that SAE is not a Judgment Debtor. (Doc. 149 at 4-5.) Hoffman claims that this fact is "established in the Affidavit of Peter Hoffman filed with his Reply to [Jonesfilm's] Opposition to Judgment Debtor's Motion To Dismiss or Transfer This Action, filed February 3, 2012." (*Id.*)

This Court could find no support for Hoffman's arguments located in any affidavit on the record. (*See* Docs. 128, 129, 149, 150.) Additionally, this Court finds merit in Jonesfilm's assertions. As such, this Court hereby amends its third decretal paragraph to name Seven Arts Entertainment, Inc. and Seven Arts Filmed Entertainment Limited as the appropriate judgment debtors.

**C. Conclusion**

Based on the foregoing;

**IT IS HEREBY ORDERED** that Judgment Debtors and Garnishees are found in contempt of Court.

**IT IS FURTHER ORDERED:**

1.      That Judgment Debtor Peter Hoffman and Garnishee Leeway Properties must immediately deliver the $174,769.56 of garnished funds.  Hoffman and Leeway must deliver these funds within fourteen days.

2.      Judgment Debtors must deliver within fourteen days their financial statements and tax returns for the years 2007 through 2010, and 2011 to the extent available in order to comply with this Court's November 15, 2011 Order.

3.      Garnishee Leeway, Garnishee Seven Arts Entertainment, Inc., and other Garnishees shall provide proper supplemental garnishment interrogatory answers within fourteen days in order to comply with this Court's November 15, 2011 Order.

4.      Judgment Debtors and Garnishees deliver within fourteen days the $21,357.50 in attorneys fees that they were required to pay under this Court's November 15, 2011 Order.

**IT IS FURTHER ORDERED** that Judgment Debtors and Garnishees are hereby sanctioned, jointly and severally, in the amount of $15,000.00.  This amount shall be paid to Judgment Creditor Jonesfilm within fourteen days of this Order.

**IT IS FURTHER ORDERED** that each day after the fourteen days in which Judgment Debtors and Garnishees do not provide the appropriate funds, responses, financial statements, and/or tax

returns they will be found in contempt and sanctioned $500.00 per day until they comply fully and completely with this Order of the Court and the Court's November 15, 2011 Order.

**IT IS FURTHER ORDERED** that the third decretal paragraph of this Court's November 15, 2011 Order be amended to reflect two Judgment Debtors that Seven Arts Entertainment, Inc. and Seven Arts Filmed Entertainment Limited are the appropriate Judgment Debtors and not "Seven Arts Entertainment Limited."

*II. Motion to Dismiss for Lack of Jurisdiction*

Before the Court are Defendants Peter Hoffman, Seven Arts Filmed Entertainment Limited, Seven Arts Entertainment Inc. and CineVisions Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, Motion to Transfer Pursuant to 28 U.S.C. §1404(a). (Doc. 126.) For the following reasons the Motion is denied.

### A. Legal Standard

"Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists." *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982)). When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in this case, the nonmoving party must only make a prima facie showing, and the court must accept as true the nonmover's allegations and resolve all factual disputes in its favor. *Guidry*

*v. U.S. Tobacco, Co., Inc.*, 188 F.3d 619, 625 (5th Cir. 1999). "In determining whether personal jurisdiction exists, the trial court is not restricted to a review of the plaintiff's pleadings*." Jobe v. ATR Marketing, Inc.*, 87 F.3d 751, 753 (5th Cir. 1996). The Court may consider matters outside the complaint, including affidavits, interrogatories, depositions, or any combination of the recognized methods of discovery. *Id.* (citing *Colwell Realty Investments v. Triple T. Inns of Arizona*, 785 F.2d 1330 (5th Cir.1986)).

"A federal court sitting in diversity must satisfy two requirements to exercise personal jurisdiction over a nonresident defendant." *Pervasive Software, Inc. v. Lexware CMBG & Co. KG*, – F.3d –, No. 11-50097, 2012 WL 2948453, at *4 (5th Cir. July 20, 2012). First, the forum state's long-arm statue must accord personal jurisdiction. *Id.* Second, the forum state's exercise of jurisdiction must comport with the Due Process Clause of the Fourteenth Amendment. *Id.* (citing *Mink v. AAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999)). Louisiana's long-arm statute extends jurisdiction to the full limits of due process. *See* La. R.S. § 13:3201, *et seq*. Thus, the Court's inquiry must focus on whether subjecting Hoffman, SAFE, CV, and SAE to suit in Louisiana would be consistent with the Fourteenth Amendment. *See Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999).

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quoting *Int'l Shoe Co. v.*

*Washington*, 326 U.S. 310, 329 (1945)). The Due Process Clause protects a corporation, as it does an individual. *Int'l Shoe*, 326 U.S. at 319. Ultimately, the Due Process clause permits the exercise of personal jurisdiction over a nonresident defendant when (1) a defendant has purposefully availed itself of the benefits and projections of the forum state by establishing "minimum contacts" with the forum state; and (2) exercising personal jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999)(citing *Int'l Shoe*, 326 U.S. at 316).

"Minimum contacts" can be established through specific jurisdiction or general jurisdiction. *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). Specific personal jurisdiction exists when a defendant has purposely directed its activities, or availed itself of the privileges of conducting its activities, toward the forum state and the controversy arises out of or is related to those activities. *Burger King*, 471 U.S. at 472. General personal jurisdiction exists when the defendant has engaged in continuous and systematic activities in the forum state, regardless of whether or not it is related to the plaintiff's cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984).

"If a nonresident defendant has sufficient related or unrelated minimum contacts with the forum, we must then consider whether the 'fairness' prong of the jurisdictional inquiry is satisfied." *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994) (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 105 (1987)). The fairness inquiry is determined by analyzing several factors. *Asahi*, 480

U.S. at 113.  These factors are: (1) the burden upon the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) the judicial system's interest in obtaining an efficient resolution of controversies; and (5) the shared interest of the states in furthering fundamental substantive social policies.  *Bullion v. Gillespie*, 895 F.2d 213, 216 n. 5 (5th Cir. 1990) (internal citations omitted).

### B. Arguments of the Parties

Hoffman, SAFE, CV and SAE ("Moving Parties") argue that this Court does not have jurisdiction over them by means of either "specific" or "general" jurisdiction.  Regarding the absence of specific jurisdiction, Moving Parties argue that "there is no conceivable relationship between the alleged breaches and torts giving rise to the two judgments . . . and any contacts with Louisiana of any Moving Party." (Doc. 126-1 at 6.) As to general jurisdiction, Moving Parties assert that they do not have offices or other "continuous and systematic contacts" with Louisiana. (*Id*. at 5), and specifically that SAE has no ownership interest in any Louisiana LLC's and conducts "no business activities in Louisiana." (*Id*. at 4.)  Moving Parties assert that the burden for establishing general jurisdiction is high, and that Jonesfilm has not and cannot otherwise  meet this "difficult test"  for establishing continuous and systematic contacts with Louisiana. (*Id.* at 6-7.)

In opposition, Jonesfilm argues that this Court has general jurisdiction over Moving Parties for any of four reasons: (1) for the same reasons this Court has general jurisdiction over co-Judgement Debtor SAP; (2) Moving Parties have "substantial, systematic, ongoing contacts with

Louisiana more than sufficient" for a finding of general jurisdiction; (3) Moving Parties submitted no affidavit in support of the factual assertions in their motion; and/or (4) Moving Parties submitted to the jurisdiction of this Court by voluntarily making a general appearance on July 27, 2011 before Judge Knowles.  (Doc. 133 at 2.)  Specifically as to SAE, Jonesfilm argues that due to SAE's relationship as a parent of SAFE and both companies' relationships with SAP and Hoffman this Court has proper jurisdiction. (Doc. 133 at 16-17.) Jonesfilm also asserts that there is no "clear line of demarcation among the Seven Arts companies," including SAE. (*Id*. at 18-19). As for CV, Jonesfilm alleges that CV is merely the "alter ego" of Hoffman and other Judgment Debtors, such that jurisdiction over Hoffman confers jurisdiction over CV. (*See Id.* at 20.)

### C. Analysis of the Individual Parties

#### (i) Peter Hoffman

This Court has already found that it has general jurisdiction over Peter Hoffman.  *See Jonesfilm v. Hoffman*, No. 11-1994, 2012 WL 4325461, at *4 (E.D. La. Sept. 20, 2012) (Peter Hoffman "[h]as engaged in continuous and systematic contacts, both of a personal and business nature, such that it would not be unconstitutional to exercise jurisdiction over him.") In that decision, this Court noted that Peter's residency in Louisiana indicated a general submission to the state's power.  *Id.*  The Court found that Hoffman "[n]ot only had continuous contacts with the state of Louisiana, but [had] significantly benefitted from the state of Louisiana" both personally and professionally.  *Id.* at *5.  Furthermore, this Court held "[t]hat the fairness inquiry lends in favor

of this Court having general personal jurisdiction over Peter [Hoffman]." *Id.* Ultimately, the Court ruled "[t]hat the assertion of general personal jurisdiction over Peter [Hoffman] does not deprive him of his due process liberty interests and suit in this forum is proper." *Id.* For these reasons Hoffman's Motion is denied.

(ii) Seven Arts Filmed Entertainment Limited

This Court has already found that it has general jurisdiction over Seven Arts Filmed Entertainment Limited. *See Jonesfilm v. Hoffman*, No. 11-1994, 2012 WL 4325461, at *6 (E.D. La. Sept. 20, 2012) ("[a]lthough SAFE may be a British Corporation with its offices and employees in London. . . this Court [has] jurisdiction [over SAFE] based not only on SAFE's contacts with the forum, but also based on the contacts of SAP and Peter [Hoffman].") In that ruling, this Court found that "SAFE has sufficient and continuous contacts and benefits from the state of Louisiana such that jurisdiction is proper." *Id.* at *7. In addition to these individual contacts, the Court also found that due to the PLC-SAP-SAFE relationship it is "[a]ppropriate to consider the contacts that SAP and other Seven Arts affiliates have with the forum to determine whether jurisdiction exists." *Id.* Ultimately, the Court held that "[d]ue to SAFE's own contacts and because a presence is maintained in Louisiana by SAFE's affiliates, including SAP and other Seven Arts Louisiana limited liability companies, and Peter Hoffman, its agent and controlling officer, the constitutional requirements of due process are clearly satisfied." *Id.* at *8. For these reasons, SAFE's motion is denied.

(iii) <u>Cinevisions</u>

CV argues that it is an "inactive California corporation owned by Hoffman that ceased active business in 2003 when its assets were transferred to [SAP]." (Doc. 126-1 at 4.) Jonesfilm, however, asserts that CV is the "alter ego" of Hoffman and other Judgment Debtors. (Doc. 133 at 20.)

> [F]ederal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court. The theory underlying these cases is that, because the two corporations (or the corporation and its individual alter ego) are the same entity, the jurisdictional contacts of one are the jurisdictional contacts of the other. . .

*Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002). Therefore, if the Court decides that Hoffman and CV are alter-egos, the same reasoning by which jurisdiction may be found over Hoffman applies equally to CV.

"Cinevisions entered into an Agreement with Seven Arts Pictures dated as of October 1, 2002, pursuant to which Cinevisions purportedly transferred its Second Picture and related rights to Seven Arts Pictures, Inc. . . . Hoffman signed that Asset Transfer Agreement, on behalf of Cinevisions and Seven Arts Pictures, Inc." (Doc. 133-4 at ¶18.) Per this Transfer Agreement, "Cinevisions purported to assign to Seven Arts Pictures, Inc. all Cineivisons' right, title, and interest . . . and Seven Arts Pictures, Inc. assumed all of the obligations, responsibilities, and liabilities." (*Id.* at ¶19) (internal quotations omitted). After transferring all of its assets to SAP, "Cinevisions was purportedly left without assets and inactive." (*Id.* at ¶20.)

On the other hand, documentation provided to this Court reveals that CV is being utilized in activities on behalf of Hoffman, PLC and Leeway. During previous proceedings, evidence was adduced that Hoffman was, subsequent to the transfer agreement, "[p]aid compensation by and through Cinevisions of $416,666.62 during the year ended December 31, 2003 and $150,000.00 during the year ended December 31, 2004." (*Id.*) In addition to Hoffman receiving compensation from CV after the company was purportedly inactive, CV was also utilized when opening up a business checking account for Leeway Properties, a Louisiana corporation. (Doc. 133-2.) Interestingly, in the City National Bank documentation Peter Hoffman is listed as a signatory on the account. (*Id.*) Presumably, via this City National Bank checking account, Hoffman and Leeway both were able to exchange funds, receive funds and be in receipt of statements by utilizing CV. Lastly, in PLC's SEC filings, it represented that CV was pursuing a Canadian legal action on their behalf, despite the fact that Hoffman and SAP argue that it is inactive. (Doc. 52-2 at 20, 26.)

In determining whether a corporation is an alter ego of an individual, a court is directed to "consider the totality of the circumstances, including the total dealings of the corporation and the individual, the amount of the financial interest the individual has in the corporation, the ownership and the control that the individual maintains over the corporation, and whether the corporation has been used for personal purposes." *Chao v. Occupational Safety and Health Review Comm'n*, 401 F.3d 355, 380 (5th Cir. 2005) (quoting *Estate of Lisle v. Comm'r of Internal Revenue*, 341 F.3d 364, 375-76 (5th Cir. 2003). In making this assessment, "[c]ourts need to look beyond formalities

and records to determine the true economic relationship between the entities." *Id.* (citing *United States v. Jon-T Chems.*, 768 F.2d 686, 693 (5th Cir. 1985).

This Court notes that a central figure to all of these companies is Peter Hoffman, to which this Court has already found that it has jurisdiction over. In addition to CV's inter-relationship with Hoffman, CV also has a relationship with companies that Hoffman controls and is affiliated with, including SAP, PLC, and Leeway. Hoffman has continually benefitted from these relationships. Moreover, it is evident that Hoffman and Hoffman's affiliates continue to utilize CV, despite his contentions that it is inactive.

Based on these facts, the Court finds that CV is an alter ego of Hoffman. As an alter go of Hoffman, this Court can properly exercise general jurisdiction over CV, as this Court has general jurisdiction over Hoffman. Thus, Cinevisions motion is denied.

(iv) Seven Arts Entertainment Inc.

Seven Arts Entertainment, Inc. is a Nevada corporation of which Hoffman is its CEO, director, and controlling figure. (Doc. 133-1 at ¶4.) While SAE is the successor of PLC, SAE is also a parent to its wholly owned subsidiary Seven Arts Filmed Entertainment Limited, which this Court has already found that it has jurisdiction over. *See* Doc. 133-11; *see also Jonesfilm v. Hoffman*, No. 11-1994, 2012 WL 4325461, at *6 (E.D. La. Sept. 20, 2012). In addition to its relationships with PLC and SAFE, SAE has a relationship with SAP through which SAE obtains or transfers rights or assets related to its business. (Doc. 133-11 at 6.) In light of these relationships, this Court must

24

determine whether or not SAE's operations are so intertwined with SAFE, SAP, and/or Peter Hoffman such that those contacts are attributable to SAE.

After an examination of the facts surrounding the operations of a parent and subsidiary, the Court may establish jurisdiction over one based on the contacts of the other. *See Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 856 (5th Cir. 2000). "Ordinarily, where a parent and an affiliate or two affiliate companies maintain separate identities, jurisdiction over one does not provide a basis of jurisdiction over the other." *Oyuela v. Seacor Marine (Nigeria), Inc.*, 290 F.Supp.2d 713, 722 (E.D. La. 2003) (quoting *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333 (1925)). On the other hand, "[t]here may be instances in which the parent so dominates the subsidiary that they do not in reality constitute separate and distinct corporate entities . . ." *Dalton v. R&W Marine, Inc.*, 897 F.2d 1359, 1363 (5th Cir. 1990) (quoting *Hargrave v. Fireboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983); *Southmark Corp v. Life Investors, Inc.*, 851 F.2d 763 (5th Cir. 1988)). Ultimately, "the degree of control exercised by the parent company must be greater than that normally associated with common ownership and directorship" for jurisdiction to be established based on the alternate's contacts with the forum state. *Oyuela*, 290 F.Supp.2d at 722 (quoting *Kelly*, 213 F.3d at 856 (5th Cir. 2000)).

SAE represents in its SEC filings that it is party to a "related company agreement" with SAP. Notably, this Court has already found that it has jurisdiction over SAP. Se*e Seven Arts Pictures, Inc., et al v. Jonesfilm*, No. 09-4814, 2011 WL 2461701, at *4-6 (E.D. La., June 17, 2011). Pursuant to this

agreement, SAP provides services for SAE at no fee other than Peter Hoffman's salary and the direct third party costs of the Los Angeles office. (Doc. 133-11 at 6.) The services provided by SAP are at the requests of the management of SAE and include "[a]ccounting services, audits of distribution statements, collection of accounts receivable, supervision of production of motion pictures and similar day-to-day aspects of [SAE's] business." (*Id.*) SAE further represents that it has made and received advances to and from SAP and various Louisiana limited liability companies. (*Id.*) The balances of these combined accounts were $1,768,212 and $2,725,974 as of September 30, 2011 and June 30, 2011, respectively. (*Id.*)

In addition to these services, SAE also shares with SAP all personnel, operations, monies, logo, letterhead and other materials without any line of demarcation. (Doc. 52-2 at 15.) Through common officers, shared offices, logo, letterhead, email addresses and bank accounts SAE and the other Seven Arts companies are part of the larger Seven Arts group engaged in the production and distribution of films in Louisiana and the redevelopment of property located in Louisiana. (*Id.*) Hoffman has also testified that the cash flow between the Seven Arts companies is various and something that is unable to be characterized. (Doc. 52-2 at 13.) This Court further notes that the same counsel represents PLC, SAP and SAE in these proceedings.

In addition to SAE's significant relationship with SAP and Hoffman's various other Seven Arts affiliates, SAE also notes in its filings that Hoffman controls and has agreements with his various companies that "[p]rovide that all revenues related to [SAE's] business payable to Hoffman or any

of these related party companies is due to [SAE]. . ."  (Doc. 133-11 at 6.)  Thus, the agreement to

which SAE is a party to provides for Hoffman's employment compensation of $500,000.00 per year,

expense reimbursement and benefits.  (*See, e.g.,* Docs. 133-8, 133-9, 133-10.)

Hoffman has also testified that while rendering services in Louisiana through SAP, it was for

the benefit of PLC.  (Doc. 52-2 at 15.)  Specifically, Hoffman asserted that PLC is the ultimate

beneficiary of the services that he performs in the United States.  (*Id.*)  Thus, SAE, as PLC's

successor is the beneficiary of these contacts that both Hoffman and SAP have made in the state

of Louisiana.  (Doc. 133-1 at ¶¶50-51.)

In the end, this Court finds that due to SAE's various relationships with Hoffman, SAFE and

SAP this Court finds that it is appropriate to use the contacts of these affiliates to determine

whether jurisdiction exists.  *See Oyuela*, 290 F.Supp.2d at 723.  Thus, considering the inter-mingling

of the Seven Arts companies and Hoffman and the benefits that SAE receives from the state of

Louisiana, this Court finds that the constitutional requirements are clearly satisfied and this Court

has proper jurisdiction over SAE.  Consequently, SAE's Motion to Dismiss is denied.

### D. Alternative: Motion to Transfer

#### (i) Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may

transfer any civil action to any other district or division where it might have been brought or to any

district or division to which all parties have consented." 28 U.S.C.A. § 1404(a) (West 2012). "The

27

moving party bears the burden of demonstrating that the case should be transferred to an alternate forum." *Laitram Corp. v. Hewlett-Packard Co.*, 120 F.Supp.2d 607, 608 (E.D. La. 2000) (citing *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966)). To prevail, the moving party must demonstrate good cause. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (internal quotation and citation omitted). Good cause is shown by satisfying the statutory requirements and clearly demonstrating that the transfer is for the convenience of the parties and witnesses and also in the interest of justice. *Id.*

In making this assessment, courts are directed to look to the factors enunciated by the Supreme Court in *Gulf Oil Corp v. Gilbert*, 330 U.S. 501 (1947). The private interest factors include (1) plaintiff's choice of forum; (2) the place of the alleged wrong; (3) convenience of the witnesses; (4) convenience of the parties; and (5) all other factors relating to the expeditious and efficient adjudication of the dispute. *See Laitram*, 120 F.Supp.2d at 608. The public interest factors include (1) the administrative difficulties in two jurisdictions; (2) local interests; (3) conflict of laws; and (4) the fairness of subjecting citizens in an unrelated forum to jury duty. *See Id.* In the end, however, the initiating party's choice of forum is entitled to great weight and should rarely be disturbed. *See Gulf Oil Corp.*, 330 U.S. at 508 (1947).

(iii) <u>Analysis</u>

Moving Parties allege that this case should be transferred under 28 U.S.C. § 1404(a) to the United States District Court of the Central District Court of California ("Los Angeles District Court")

because "all parties have accepted jurisdiction in the Los Angeles District Court and all evidence and witnesses related to the Moving Parties are available in that District." (Doc. 126-1 at 8.) Moving Parties note that the agents or employees who have knowledge of the activities of any Judgment Debtor neither live nor reside in Louisiana. (Doc. 150 at 7.) Additionally, they note that there are no books, records or documents of any kind maintained in Louisiana because this information is located in California. (*Id.* at 8.) Moving Parties further argue that a venue transfer is appropriate because the California court issued the judgment sought to be collected on and California law should apply to all discovery concerns. (Doc. 126-1 at 8.) Lastly, Moving Parties assert that there is no reason to burden this Court with these judgment debtor proceedings. (*Id.*)

Jonesfilm opposes the transfer and contends that Moving Parties' request is nearly identical to a previous motion already filed and denied by this Court. (Doc. 133 at 21; *see also* Doc. 60.) Jonesfilm further claims that Moving Parties have not met their burden of making "a convincing showing of the need for a 28 U.S.C. § 1404 transfer." (*Id.* at 22.) (internal quotations omitted). Jonesfilm concludes that California is not an appropriate venue because Judgment Creditors are currently seeking to enforce liens on properties in Louisiana, none of the Louisiana Garnishees have consented to jurisdiction in California, many of the non-party witnesses live in Louisiana, and this Court has a strong interest adjudicating the disobedience of its own orders. (*Id*. at 22-25.)

This Court finds that Moving Parties have not shown good cause such that a transfer to the Los Angeles District Court is appropriate. Moreover, this Court finds that the factors weigh in favor

of keeping the litigation here.

Significant to the Court is that Jonesfilm is pursuing its remedies under various California judgments through the Louisiana Courts because Jonesfilm was unable to effectively enforce in California its liens and rights as to Louisiana real estate and Louisiana Garnishees. Moreover, a California court may not be able to subpoena documents or compel the presence of or testimony of Louisiana witnesses. Additionally, this Court finds it difficult to comprehend that a California Court would be more effective at dealing with liens on real property located within the state of Louisiana than a Louisiana Court. Last but not least, the Court notes that this is one of four pending cases involving the same or similar parties and the same or similar underlying California judgments within the Eastern District of Louisiana.

Ultimately, this Court finds that the Moving Parties have failed at meeting their burden to show that the Los Angeles District Court is the appropriate forum in which Jonesfilm can adequately enforce its rights. In this case, the Court exercises its discretion and finds that this case should not be transferred to the United States District Court of the Central District of California. Such a transfer would be inconvenient and not in the interests of justice. As such, Moving Parties motion is denied.

**CONCLUSION**

For the foregoing reasons, the Motion for Judgment Against Judgment Debtors and

Garnishees for Their Disobedience of this Court's November 15, 2011 Order (Doc. 121) filed by Jonesfilm is GRANTED and the Motion to Dismiss for Lack of Jurisdiction and/or Alternatively Motion to Transfer Venue (Doc. 126) filed by Cinevisions, Peter Hoffman, Seven Arts Filmed Entertainment Limited and Seven Arts Entertainment Inc. is DENIED.

New Orleans, Louisiana this 1st day of November, 2012.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT COURT JUDGE**